Good morning, everyone. The first item of business this morning, December 16, 2604, Front Row Technologies against MLB Advanced Media. Mr. Schor. May it please the Court. There are three major deficiencies in the District Court's ruling I'd like to address today. First, the District Court did not infer all factual disputes would be resolved in favor of Front Row as required by Rule 12 and this Court's holding individual memories. Second, the District Court failed to construe the claims in light of the specifications of the patents at issue and in fact chose a representative claim that is not in fact representative because there are no representative claims in this broad portfolio. Third, the District Court misapplied House and its progeny and did so in exactly the manner repeatedly warned against by the Supreme Court. Fourth, the District Court looked for an abstraction and adjusted its lens to find one, eviscerating the presumption of validity and tangling lip service to the clear and convincing evidence standard. In essence, the District Court did what the appellant's brief is trying to do. And when I looked at this brief, I thought it was amazing that they highlight for you what they want you to look at and ignore 90 percent of the claim language. Doesn't everyone do that? I've never seen it before, but maybe I haven't been around the block as many times. But if you have to highlight a claim's abstraction to see it, the claim isn't abstract. Do you think we should adopt that as a principle? I think if someone has to ask you to ignore 90 percent of the claim to find an abstraction, I think that the presumption should be it's not abstract, absolutely. Let's take a look at the law book. On that, we can certainly presume that claims are patent eligible, but we've certainly not only had claims that had many, many, many words in them that were easily identified as coming down to something that was abstract and adding nothing even assertively inventive. Well, here, the words that they're asking you to ignore are the enabling words. They're the words that actually put meat and bones on the idea. And so when you look at the words, and we'll get into it if necessary in detail, but the words that they're asking you to ignore are concrete, limited, specific examples of how to implement the invention. I can take any patent and highlight a few words in the patent and say it's abstract if I ignore specific, implementing, non-preemptive language. But if you wrote an extremely extensive claim with many concrete, limiting, non-preemptive terms, all of which are not even assertively in advance, it wouldn't be any good, would it? Well, that's not the situation we have here, but of course what you're saying is a truism. If something's not original and not inventive and doesn't use anything other than conventional ways, there's no combination, of course it's not patentable, but that would go to a 102-103. I mean, there's no reason. That's exactly what you're talking about is there's nothing new, there's nothing useful, there's nothing novel. That's a 102-103 analysis. That's not a 101 analysis. Well, except that those statutory provisions are no longer quite as distinct as maybe the patent borrower once thought. Yes, the patent borrower was instructed by this court about KSR, that the specification teaches the claims claim. People prosecuted hundreds of thousands of patents with that idea, and then supposedly now we're going to turn that on its head and say that the patents have to teach every aspect of enablement of the invention, and you can sort of ignore the specification. I mean, there's patent practitioners out there who have built entire careers based on KSR where the whole idea is I'm going to try to get you as broad a claim as possible. We'll teach in the specification, we'll go into the detail in the specification according to KSR just like we were told to do, and now people who prosecuted patents that way are being told that what they've done is they've done a disservice to their client because they rendered the claims abstract. That's not the situation we have here, and the situation we have here is very different. But what we have here is a situation when the application was filed that was well known to have streaming video to handheld devices, correct? No, absolutely not. Not correct. No, and there's no proof of that anywhere in the record. As a matter of fact, if you go look… Well, I thought the specification pretty much said that. Well, the specification talks about something that we're mixing apples and oranges here because what the law is is that if you use something in a conventional way, a completely conventional way… And the specification talks about the existence of handheld devices at the time of the application, the receipt of video on those devices. Why is my statement wrong in the light of your own specification? It was something that had been disclosed. It was not conventional. It was not well known. If you go look up cell phones in 2000, you get the candy bar phones of Nokia. There's no packeted, compressed data. So the difference is between what was known and what was well known? We know right now about flying cars, but they're not conventional. We know right now about holographic telephones where you pick up the telephone and there's a holographic display of your mother when you talk to your mom. That doesn't make it conventional. The fact that something is in the prior art doesn't make it conventional, doesn't make it well known. It means that someone thought of it. So that's a disconnect. People say, well, it's in the prior art. If everything that's in the prior art is deemed to be conventional, there's nothing left to invent. I mean, there's literally nothing left to invent if we're going to say that if it's in the prior art, it's conventional. Conventional means commonly in use. So what's the invention here? Put aside the location of the viewer limitation. What's inventive about streaming video to handheld devices? What's going on? Well, that's not what was invented. What was invented is it decoupled physical presence with perspective. Let me give you an example. I'm sitting here and I'm in the room. I can change my perspective.  I can look at you. I can look at you. I can change the perspective of what I look at. What this did was said, if you're not present, not only if you're not present, but if you are anywhere that can be authorized, then you can change your perspective yourself and you can do it dynamically. You choose. The prior art was the television station told you where you had to look. The streaming video person even told you what you were going to see. What this said was you get to be anywhere. Now, you have to be authorized. It can be authorized by geolocation. It can be authorized because you paid and you have a decryption code or something like that. But once you are authorized, you can receive through a handheld device with a touch sensitive display capable of showing multiple different perspectives. You can choose the perspective and you can decide what you see and how you see it. That had never been done. It's not conventional. It wasn't conventional in 2000. It wasn't conventional in 2005. It wasn't conventional in 2009. It had not been done. We never got an opportunity to put an expert witness on the stand to actually testify about what made this special, what made it different, what made it inventive, and what made it different from anything that had ever come before. We never got that chance. And as a matter of fact, the court just basically said, I have no idea how, just basically said my own historical observations without even saying what those historical observations were. I don't remember. When you talk about choosing perspective, you're not talking about the user controlling the angle of the camera, but rather selecting among existing feeds. No, Your Honor. Some of these claims actually allow the user to zoom and pan. I mean, again, when you get into the dependent claims, which the court ignored, never talked about, never did anything about, these claims go far beyond anything that is being discussed in the defendant's brief in their highlighted sections. And they do that because they are literally trying to adjust your lens, adjust your focus to a 50,000 foot level and ignore the true purpose of the invention, which is to decouple. Right, but you keep generalizing your argument to be an argument that says, this whole 101 system has gone awry and I want all my claims. Can you focus on one very specific thing? Does one of the claims, and have you featured it, claim me as a handheld device user controlling a camera on the side of the football field? There is a pan and zoom feature that is part of one of the claims. But let's get into the claims, because I think that's sort of what I'm hearing from you. Could you tell me where in your brief you make this argument about the pan and zoom feature being what renders this not abstract? I never considered the pan and zoom feature to be what rendered it not abstract. I mean the level of abstraction, once you get down to that point, I think it's not abstract. So it's not there in the brief? No sir, it's not in the brief. I thought this was the first time I'd heard about this. But what we have here is we have, take the old one way communication from a television. One way, analog, one way. This added the front row portfolio as user authentication via two way secure communication via a handheld device. The handheld device has to be touch screen, capable of displaying more than one view at a time, to allow the user to select the view they want to see. So let's talk about what you said in your brief instead of what you're saying here now today. What is it you said in your brief rendered this not abstract? Well it's not abstract because exactly what I'm saying now is it's a combination. Well let's see where you make this argument in the brief. I'd like to see where in the brief you make the argument it's not abstract and on what theory. But what is it that's added? From beginning to the end of the brief we talk about the combination of elements, the combination of technology, non-conventional technology, that renders these things completely, totally novel, new, never before done, and hadn't been done even five, seven, eight years afterwards. They built a six billion dollar company on something they say is obvious, which to me is, we make a foolish lie. Yeah but I'll tell you an abstract argument about why something's not abstract is probably not going to cut it. Well the reason why it's not abstract is because two way secure authentication, the transmission of video to a handheld device in 2000 via packeted compressed to a handheld device capable of decompressing, depacketing, and displaying. The transmission has to comply with IEEE 802.11 standard. You can't be less abstract than that. You're actually calling out the standard for the Wi-Fi. The handheld device has to be one that can process and decompress encrypted packeted data, not just any packeted data. The 856 patent requires that the display be touch sensitive, that simultaneously and singularly displays venue based data. The 856 patent claim 2 requires the use of access codes. Claim 6 calls for a CDMA cell network. The 184 patent requires bidirectional communication constantly between the sender and the user, so the dynamic use in changing of the perspective is always present. The 184, 856, 460, and 895 patents all claim more than one video perspective from more than one camera will be transmitted at the same time to the handheld device, something that had never been done before and wasn't done for several years. The consumers were allowed to choose the video feed, unlike in television where when you go to channel 12, you get channel 12. You don't have any choice. I don't have time to go over all the limitations in the 98 claims wiped out by the district court without a single reference to the specification or prior art, but any fair reading reveals that the specifications and the claims are far more than over the internet or on a computer, those type of generic limitations. The described inventions are not abstract. The analysis should have ended right there. I've only got two minutes left for my rebuttal, so I'm sorry. I need to cut off before I continue. No, you'll have enough rebuttal. Let's hear from Mr. Wheaton. Thank you. Good morning, Your Honors, if it please the court. I want to address just a couple of the questions that the court asked so that the record is clear. The asserted claims in this case do not include payments. That is not a feature in the asserted claims. With respect to Your Honor's question, if you look at the bottom of Column 2 through Column 3 of the 895 patent, the 895 patent lays out exactly what Your Honor was questioning, which is according to the specification itself. That's what the district court looked at was the specification of these patents. They all five share a common specification, largely. That specification makes clear that at the time of the filing of the patent application, all of these features were well known. In fact, what the specification says is that at the time, there were video-enabled PDAs, personal digital assistance handheld devices. At the time, they were video-enabled, and in fact, there were brand names of those particular devices that were available on the market. So the notion that transferring video to a PDA was some new or revolutionary concept is just not supported by the specification, not by my assertion or the court's below assertion by the specification. In addition... Well, I guess the inventive quality of the thing doesn't have to be supported by the specification, but one of the objections they make is that they said they should have had the opportunity to present evidence as to why various features were inventive. I'm not... Some of them seem on their face not to be inventive, such as using a particular industry standard. But what's your answer to the fact that this was done as judgment on the pleadings instead of, say, summary judgment with an opportunity for discovery? Well, the issues that were raised by FrontRow, as I understand them, there is no contesting on their part that various wireless networks that are discussed in the specification were known, various handheld devices were known, that the various components, basically, of every single claim was known. Even the notion of multiple cameras, it says in the specification, again, that those were known. So I don't think that is their objection. Their objection really is a conflation of novelty because their argument is nobody had ever done this before in 2000. Ignore the reference that I just pointed your honor to, which is that it was well known and, in fact, devices weren't able to receive video. Their argument is that this particular combination had not been specifically done before. But we have two problems with that. First of all, that's a novelty argument. That's correct, is it not? At that stage, in the beginning, these devices were known. I'm sorry? That the combination had not been made, because they may have been known because they were new. But drawing the distinction between known and well known is their argument, is it not? Well, so their argument is twofold. One is, for example, was a video-enabled phone known? And he's saying yes, the spec says yes. And then the argument is, was it well known? But the particular combination, that's not really the inquiry as to whether or not this is novel. That's a 102 argument or a 103 argument. From a 101 perspective, what we have is we have planes, much like in electric power or much like in content extraction, contracted at a very high level of functionality. They're very result-oriented and functionally claimed. You're going to capture video. You're going to process the video. You're going to transmit the video to a device that can receive the video and then display it. That's effectively what they claim in every single claim that's asserted in this case. And the notion of capturing... And what's novel is the content of the video that they are putting through that process. They're not really even saying that the novelty lies in the content itself. Now, I heard Mr. Schor stand up here and say that the novelty was the ability to pan and to be able to zoom, to control what the camera is doing. None of that appears in the asserted claims, by the way, because they... Well, that may be more than a by-the-way point. That might actually be something significant had it been part of the case. What they... Remote control of the camera on the field. Could be new. If you use the term, that sounds like it might even be technological. It could be new. I'm not sure it's technological. But for a user, not the person who's running the camera to control it, could be new at that time. That's not an issue that's been briefed. It's frankly not an issue that was presented below. The point is that when you claim these things at a very high functional level, there's no dispute that the combination of capturing data, processing it for transmission, transmitting it, receiving it at a portable device, and then displaying that information was known at the time. How could we know that? That may be. But what I understand them to be saying, and they argue to the district court, is that they were entitled to conduct discovery and make a factual showing as to why some of these features were innovative. And there are all sorts of, you know, 20 different things are listed here on appeal. Some of them weren't even in the brief. What I'm trying to get at is what exactly did they say that they wanted to conduct discovery on, and is it something where they needed discovery? The district court at 87 and 88 gives, I guess, six examples of so-called factual disputes. And the district court says, no, those aren't factual disputes, because they are found in the specification, or they were well known, and there's no need for factual discovery. So could you address that question? Yes. The district court was correct, because the issues, as I understand front row's argument, is not whether or not the 802.11 standard was well known at the time, and that it was a wireless network protocol. That's not what they're saying they need discovery on. What they want discovery on, and what they want to have an expert state, and what their purported expert declaration stated, was that this combination of elements had never been done before. But that, again, is not the test. So they put in an expert declaration at the time of the motion for judgment on the pleadings. Is that what happened? As I recall, there was an expert declaration that they were asking to have considered at the motion on the pleading stage, and the court properly said, no, I don't need to go into those issues, because the specification itself. So the declaration raised certain issues, and the district court said, I don't need discovery on that, because those are already in the specification. Correct. Correct. And so what we have is, again, what they want to point out is the novelty of the combination of elements, not any individual element. So they're not going to stand up here and say they came up with a new method of streaming, that they came up with a new wireless network, a new handheld device, or any of the various components. They're saying the combination is novel in their view. That's their argument. And therefore, it passes the 101 muster. It must pass 101. But that's not what this court's decisions have repeatedly held. In fact, in the Affinity Labs cases, which are directly on point in this case, in the Affinity Labs decisions, patents that were directed to the exact same subject matter, same priority dates, so they were both circa 2000. In fact, the Affinity Labs patents had earlier priority dates than the Front Row patents. Those patents claimed the same basic concept, taking data, transmitting it wirelessly, including video data, to handheld devices. And the same argument was made in the Affinity Labs case. This is new. This is novel. And they submitted a declaration in that case from an expert, saying that this was new and novel. And the court looked at those issues and properly found that the claims were directed to an abstract idea, in large part because of this functional claiming. And no specification or no claiming as to the how this was accomplished. Streaming may have been a difficult challenge in 2000 of a video. But you will look throughout the specification and not find the solution to that particular problem, any more so than was the case in the Affinity Labs decision, whether it was Affinity Labs versus DirecTV, or Affinity Labs versus Amazon. The district court in this case did not have the advantage of this court's decisions in those two cases. We do. And they are binding precedent. They found the same basic in Amazon, the same basic abstract idea, which was the providing of media content. And in that case, it was user-selected media content to portable devices, is an abstract idea. That was the court's holding. That applies in this case. And contrary to the suggestion that Affinity Labs didn't have the requisite detail, it did. Each of the elements that Mr. Schor just walked through and the front row goes through in its briefing, each of the elements that it says is missing from Affinity Labs is in the Affinity Labs claims and in the patent specification. If there are no further questions from your honors, I... Any more questions? No. I see the balance of my time. Thank you, Mr. Reardon. Mr. Schor? Thank you, Your Honor. First of all... So let's assume for the moment that we're dealing with two abstract ideas, as the district court said. And we're getting to step two of the house. And you said to the district court, we need discovery and there are fact issues here as to whether there are innovative concepts. Could you give me an example of what you wanted to develop through discovery and why it was error for the district court not to allow that? Yes. That's... I can. The district court found factually that the descriptions of the technology were conventional in 2000 without the aid of any evidence, without the aid of any expert testimony. That's a problem. If any conclusion was to be drawn at the Rule 12 stage, it must be that the technology, as described, was not conventional on the patent's filing date because all such presumptions should have been in our favor. If he was going to make the presumption... I think I just... I mean, I understood Judge Dyke to ask you for a specific description of a specific fact that you told the district judge you wanted to put in evidence and take discovery. Exactly. What is that? The state of the prior art in 2000 and the fact that this combination of technologies was new, novel, useful, never been done before, not anticipated, not obvious, and is enabled. It is... It boggles my mind that basically the argument that they're making that if anything is enabled with the use of technology... Did your expert address this question that you're... about the combination? Yes. We can... Where? We were not allowed to put that in the record, Your Honor. This is not in the record? No, we were not allowed. We were... We asked for permission. You didn't tender it? We couldn't tender... We asked for permission to tender to have an expert... Well, wait. How did this issue of the discovery come up? Surely... In argument. We... He said it for argument. We went in there. We had an argument. So you hadn't briefed it in advance? No, we were not allowed to brief it in advance. You weren't allowed to brief the question of whether there should be judgment on the pleadings? No. Well, we... We had a response saying it was improper under Rule 50... that this should be considered under Rule 56 with evidence and testimony. Okay, but that's what I'm getting at. What did you say in your opposition to the motion for judgment on the pleadings as to what you needed discovery about? I want you to show me... That this is... Show me something that you told the district court required discovery and evidence. This entire process required discovery and evidence. This entire process about what's conventional, whether or not it's a novel combination, whether or not it had ever been done before. This wasn't even done seven years after. Until the iPhone came out in 2007, none of this had been done before. None of this was even attempted to be done. This is a... Do you have a joint appendix cite for your brief in opposition to the Rule 12c motion? I'm sorry. I do not, Your Honor. Okay. But getting back to the point I wanted to make, what they're basically saying is anything that's enabled using existing technology at the time has to be based upon an abstraction. Because if you're using technology that existed the day you filed your patent, then it's all conventional, it's all been done before, and all you're doing is taking an abstract idea and placing it into a conventional context. That cannot possibly be the law. If that is the law, then the law is not slightly moved. It's tectonically shifted. The specifications in this case were literally ignored by the court. In the part of the ruling where he actually ruled, he did not refer to the patent specifications one single time. And in Fish, this court stated that to determine whether claims as a whole are directed to patent-eligible concepts, the reviewing court must apply a Stage 1 filter to claims considered in light of the specification. He didn't even look at the specification. But that's just not true. I mean, he looked at the specification to find it as a source of the abstract idea which he found to exist. He looked at the specification and said, I looked at the specification and here's what I conclude. Well, that's not ignoring the specification, is it? He never references a single word in it. There is zero analysis as to what he was thinking or why he did what he did. And you can't wipe out an entire patent portfolio based upon, I think so, which is what he did. He just said, I think so. And getting back to the whole zoom and pan, that's an Appendix 793, Claims 1 and 8 of the 895 patent, and also compare that with Appendix 756. But not in your brief. It's in the appendix. But not in the brief. It's not in the brief. In other words, with a page limitation where we've had 98 claims wiped out across an entire portfolio of patents to actually address all the things he should have addressed, we've needed about 200 pages. Okay. I think we have the argument. Do you want to ask any more questions of the opposition? Thank you, Your Honor. Okay. Thank you both. The case is taken under submission.